UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JACQUELYN STOKES,                   )
                                    )
        Plaintiff,                  )
                                    )    Civil No.
        v.                          )    13-13137-FDS
                                    )
WELLS FARGO BANK, N.A., d/b/a       )
America's Servicing Company, and    )
DEUTSCHE BANK NATIONAL TRUST        )
COMPANY, as trustee for HSI Asset   )
Securitization Corporation Trust 2006- )
WMC1, Mortgage Pass-Through         )
Certificates, Series 2006-WMC1,     )
                                    )
        Defendants.                 )
                                    )
_____ )

# MEMORANDUM AND ORDER ON DEFENDANT'S
# MOTION FOR JUDGMENT ON THE PLEADINGS

**SAYLOR, J.**

This action arises from a homeowner's default on her home mortgage loan. On April 20, 2006, plaintiff Jacquelyn Stokes mortgaged her home in Hyde Park, Massachusetts. Defendant Wells Fargo Bank, N.A., is the servicer of plaintiff's mortgage. Defendant Deutsche Bank National Trust Company is allegedly the holder of plaintiff's mortgage.

In June 2012, plaintiff defaulted on her mortgage payments. Defendants scheduled a foreclosure sale for her property on December 11, 2013. Plaintiff brought suit on December 9, 2013, alleging (1) violations of the Massachusetts right-to-cure notice laws, Mass. Gen. Laws ch. 244, §§ 35A and 35B; (2) common-law negligence, and (3) violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2. No foreclosure sale has occurred.

Defendants have moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). For the following reasons, that motion will be granted in part and denied in part.

## I. Background

### A. Factual Background

On April 20, 2006, Jacquelyn Stokes entered into a mortgage loan with WMC Mortgage Corporation to refinance the loan on her property located at 15 Pinewood Street, Hyde Park, Massachusetts. (Am. Compl. ¶ 4). Mortgage Electronic Registration Systems, Inc., was the servicer and mortgagee of the loan. (*Id.*, Ex. A). In 2009, she fell behind on her mortgage payments for the first time. (*Id.* ¶ 6).

On December 20, 2009, Wells Fargo Bank, N.A., sent Stokes a notice of her right to cure her mortgage default. (*Id.* ¶ 7).[1] The notice stated, "The name of the person that originated your loan is NA. The current mortgagee is Deutsche Bank National Trust Company, Trustee HSI Asset Securitization Corporation Trust 2006-WMC1." (*Id.*, Ex. B). It appears that the originator of the loan was listed as NA, or "not available." (*Id.*).[2] Following her receipt of the notice to cure, Stokes received a loan modification and was able to come current on her mortgage payments. (*Id.* ¶ 13).

In June 2012, Stokes again fell behind on her mortgage payments. (*Id.* ¶ 14). In August 2012, she contacted a Wells Fargo representative to request a repayment plan or loan

---

[1] It is unclear why Wells Fargo was handling Stokes's mortgage loan. A corporate assignment of mortgage dated February 14, 2013, states that Wells Fargo is the attorney-in-fact for Deutsche Bank National Trust Company, as trustee for HSI Asset Securitization Corporation Mortgage Pass-Through Certificates, Series 2006-WMC1. (Am. Compl., Ex. E). It is possible, although the record is silent, that Wells Fargo acquired Stokes's loan after WMC ceased operations in 2007.

[2] The amended complaint alleges that MERS attempted, but failed, to assign the mortgage to Deutsche Bank National Trust Company on July 6, 2012. (Am. Compl. ¶¶ 9, 11).

modification. (*Id.* ¶ 15). The representative told her she did not qualify for a repayment plan. (*Id.* ¶ 16). Wells Fargo subsequently sent Stokes a loan-modification application packet. (*Id.* ¶ 18).

On October 16, 2012, Stokes submitted an application for a loan modification to Wells Fargo. (*Id.* ¶ 19). On October 22, Wells Fargo filed a Servicemembers Civil Relief Act case against Stokes in the Massachusetts Land Court. (*Id.* ¶ 20).

In December 2012, Stokes contacted Wells Fargo again to request a loan modification. (*Id.* ¶ 22). She told Wells Fargo she could pay her missed mortgage payments but could not pay the attorneys' fees Wells Fargo requested. (*Id.* ¶ 23). The Wells Fargo representative told her to speak to its counsel, Orlans Moran. (*Id.* ¶ 25). When Stokes spoke to Moran, he told her he could not change the amount of the attorneys' fees and referred her back to Wells Fargo. (*Id.* ¶ 26). Stokes then submitted another loan-modification application to Wells Fargo with documentation of her monthly income and expenses. (*Id.* ¶ 27).

On February 22, 2013, a Wells Fargo representative told Stokes that she could not receive a loan modification because Wells Fargo's investor guidelines prohibited giving an individual a loan modification twice within five years. (*Id.* ¶ 28). According to the complaint, there is no evidence that such an investor guideline exists, and Deutsche Bank's pooling and servicing agreement states that it can freely waive, modify, or vary the terms of any mortgage loan. (*Id.* ¶¶ 29, 31).

In March 2013, a Wells Fargo representative told Stokes to send a $12,000 payment to allow her loan to be reinstated. (*Id.* ¶ 32). Stokes sent that payment on March 11. (*Id.* ¶ 33). She later received a call from a different Wells Fargo representative, who told her that the bank

3

would not accept the payment. (*Id.* ¶ 34). The payment was returned to Stokes. (*Id.* ¶ 35).

On March 22, 2013, a Wells Fargo representative told Stokes's housing counselor that every loss-mitigation option had been exhausted. (*Id.* ¶ 36). On May 28, Stokes's counselor sent Wells Fargo evidence showing Stokes had $14,672.90 available to repay her mortgage. (*Id.* ¶ 37). Wells Fargo declined to accept the payment, contending that it had recently learned that Stokes had experienced a decrease in income; Stokes contends that she had actually told Wells Fargo she had experienced an increase in income. (*Id.* ¶¶ 38-39). During these communications, Wells Fargo repeatedly told Stokes she would be eligible for a repayment plan if her loan was 180 days or fewer past due. (*Id.* ¶ 40).

On July 2, 2013, Stokes submitted another loan-modification and repayment-plan request to Wells Fargo. (*Id.* ¶ 41). She complied with additional requests for information from the bank on seven different occasions. (*Id.* ¶ 42). On August 29, Wells Fargo informed Stokes she was not eligible for a loan modification because the bank believed that her current payment schedule was affordable. (*Id.* ¶ 43). On November 1, a Wells Fargo representative told Stokes's counsel that Stokes was denied a loan modification because she had exceeded the number of allowed modifications and because her loan was more than 180 days delinquent. (*Id.* ¶¶ 44-45).

On November 8, 2013, Stokes was informed that Wells Fargo would foreclose on her property on December 11. (*Id.*, Ex. G).

**B.**     **Procedural Background**

Plaintiff filed his case on December 9, 2013, in Suffolk Superior Court. Defendants removed the case to this Court on December 11. On December 20, plaintiff amended her complaint. The amended complaint alleges that defendants (1) failed to give plaintiff a right-to-

4

cure notice as required by Mass. Gen. Laws ch. 244, § 35A; (2) violated her right to apply for a loan modification as required by Mass. Gen. Laws ch. 244, § 35B; (3) negligently failed to grant her a loan modification; and (4) violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.  Because this litigation was pending, defendants did not foreclose on the property.

On April 4, 2014, defendants filed a motion for judgment on the pleadings under Rule 12(c).

## II. <u>**Standard of Review**</u>

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).  It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres*, 445 F.3d at 54-55.  Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, "the court must view the facts contained in the pleadings in the light most favorable to the non-movant and draw all reasonable inferences therefrom on the non-movant's behalf."  *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

However, to survive a motion for judgment on the pleadings, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). The court will therefore grant defendant's motion for judgment on the pleadings if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### III. Analysis

Defendants have moved to dismiss the complaint in its entirety. They contend that (1) the Section 35A and Section 35B claims should be dismissed because plaintiff is not entitled to notice, a right to cure, or a right to a loan modification until December 20, 2014; (2) they cannot be liable for negligence because they do not owe plaintiff a duty to modify her loan, and the negligence claim is barred by the economic-loss doctrine; and (3) the Chapter 93A claim fails because it parallels the other claims in the complaint.

#### A. Section 35A Claim

In Massachusetts, when a mortgage grants the holder the power of sale, "the mortgagee may foreclose without obtaining prior judicial authorization." *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 288 (1st Cir. 2013). It may do so "upon any default in the performance or observance of the mortgage, including . . . nonpayment of the underlying mortgage note." *Eaton v. Fed. Nat'l Mortg. Ass'n*, 462 Mass. 569, 580 (2012).

Under Mass. Gen. Laws ch. 244, § 35A, mortgagors are entitled to an opportunity to cure a mortgage default. Pursuant to the statutory scheme, a mortgagee that seeks to accelerate or foreclose on a mortgage must notify the mortgagor of his or her right to cure and wait a certain number of days before accelerating or foreclosing on that mortgage. *See U.S. Bank Nat. Ass'n v. Schumacher*, 467 Mass. 421, 429 (2014).

6

On August 7, 2010, Section 35A was amended by the Massachusetts legislature. The amendments made two changes relevant to this case. First, mortgagors had the right to cure a mortgage default once every five years under the original version of the statute. Mass. Gen. Laws ch. 244, § 35A(a) (2008). Under the 2010 amendments, mortgagors have the right to cure a mortgage default once every three years. Mass. Gen. Laws ch. 244, § 35A(b) (2010). Second, under the original statute, mortgagees could not accelerate or foreclose on a mortgage until 90 days after sending the mortgagee a right-to-cure notice. Mass. Gen. Laws ch. 244, § 35A(b) (2008). The amendments extended that period to 150 days in certain situations. Mass. Gen. Laws ch. 244, § 35A(g) (2010).

### 1. **Adequacy of the 2009 Right-to-Cure Notice**

Under the version of the statute in effect in 2009, right-to-cure notices were required to include, among other information, "the name of any current and former mortgage broker or mortgage loan originator" and "the name and address of the mortgagee." Mass. Gen. Laws ch. 244, §§ 35A(c)(4), (5) (2008). According to the facts alleged in the complaint, the right-to-cure notice plaintiff received on December 20, 2009, listed the mortgage loan originator as "NA" and improperly identified the mortgagee. The parties do not dispute that the 2009 notice was technically deficient.

Defendants contend that although the right-to-cure notice did not strictly comply with the requirements of the statute, it was sufficient because it substantially complied with the statute. Plaintiff contends that where, as here, a mortgagor challenges a foreclosure before it has occurred and proves a Section 35A violation, a mortgagee must strictly comply with the statute before initiating foreclosure procedures.

7

The Massachusetts Supreme Judicial Court addressed this question in *Schumacher*. *See Schumacher*, 467 Mass. at 432-33 (Gants, J., concurring).[3] Under *Schumacher*,

> a homeowner who is facing foreclosure . . . may file an equitable action in Superior Court seeking to enjoin the foreclosure. . . . [T]he foreclosure may not proceed if the mortgagor proves that the mortgage holder has failed to give the required notice or failed to wait the required time period. If the mortgagor proves a violation of § 35A, the mortgage holder must provide proper notice required by § 35A and wait to see if the borrower will cure the default within the required time period before recommencing the foreclosure proceeding.

*Id.* at 432. When the homeowner does not challenge the mortgage foreclosure in court but instead is a defendant in a summary process action for eviction, he or she can counterclaim for violations of Section 35A. *Id.* at 432. To prevent the foreclosure, however, the defendant "must prove that the violation of § 35A rendered the foreclosure so fundamentally unfair that she is entitled to affirmative equitable relief." *Id.* at 433.

Under *Schumacher*, it appears that a homeowner alleging a violation of Section 35A in a pre-foreclosure suit can delay foreclosure by establishing that the mortgagee's right-to-cure notice was inadequate. In contrast, homeowners who do not challenge a foreclosure until after it occurs must prove that the mortgagee's violations of Section 35A "rendered the foreclosure . . . fundamentally unfair." *Id.* at 433.

The distinction is moot in this case. Plaintiff first defaulted on her mortgage payments in 2009. She was sent a right-to-cure notice in December of that year, and exercised her right to cure her mortgage default through a loan modification. Section 35A "is designed to give a mortgagor a fair opportunity to cure a default before the debt is accelerated and before the foreclosure process is commenced through invocation of the power of sale." *Id.* at 431. The

---

[3] The majority in *Schumacher* stated that Justice Gants's concurrence "accurately reflects the practical consequences of our decision today." 467 Mass. at 429 n.12.

right-to-cure notice clearly gave her adequate notice of her right to cure her default in 2009 because she exercised that right. Any technical deficiency in the notice was inconsequential.

Plaintiff is now facing foreclosure because she defaulted *again* in 2012. It is undisputed that defendants did not send her another right-to-cure notice after she defaulted the second time. Under the version of Section 35A in effect at the time of her first default, plaintiff could only exercise her right to cure again after five years had elapsed, or after December 20, 2014. Under the current version of the statute, she can exercise her right again after three years had elapsed, or after December 20, 2013. Because plaintiff defaulted more than three but less than five years after her previous default, the issue is whether the amendment to Section 35A retroactively shortened the period between consecutive uses of her right to cure. The Court turns to that analysis.

### 2. Retroactive Application of the Right-to-Cure Period

Under the version of Section 35A in effect when plaintiff first defaulted, mortgagors could exercise their right to cure a mortgage default once every five years. Mass. Gen. Laws ch. 244, § 35A(a) (2008). Because mortgagors could only exercise their right to cure once every five years, mortgagees were only required to send a notice of that right once every five years. *See* Mass. Gen. Laws ch. 244, § 35A(b) (2008); *see also Conti v. Wells Fargo Bank, N.A.*, 2012 WL 2094375, at *4 (Mass. Land Ct. June 11, 2012) ("The current iteration of the statute prevents borrowers from repetitively requesting notice to make the process more difficult for the mortgagee and essentially provides the mortgagor with one opportunity every three years to address delinquent payments."); *Deutsche Bank Nat. Trust Co. v. Jepson*, 2012 WL 605598, at *3 (Mass. Land Ct. Feb. 24, 2012) ("The statute, in its current iteration, guards against a

9

borrower claiming repetitive notice and cure rights, by providing that the right to cure be granted only once during any three year period.").

As noted, the 2010 amendments to Section 35A shortened the period in question from five to three years. *Compare* Mass. Gen. Laws ch. 244, § 35A(a) (2008) *with* Mass. Gen. Laws ch. 244, § 35(a) (2010). A mortgagee therefore must now send a right-to-cure notice once every three years before accelerating or foreclosing on a mortgage loan. *See Conti*, 2012 WL 2094375, at *4; *Jepson*, 2012 WL 605598, at *3. The amendments also contained a sunset provision that will change the period between successive exercises of the right to cure back to five years on January 1, 2016. 2010 Mass. Legis. Serv. Ch. 258 (S.B. 2407).

Here, plaintiff received a right-to-cure notice under the older version of the statute on December 20, 2009. Courts interpreting a mortgagee's compliance with Section 35A have started with the uncontroversial premise that the statute in effect at the time the right-to-cure notice was issued controls. *See, e.g.*, *Schumacher*, 467 Mass. at 422 n.3 ("Because the written notice of the ninety-day right to cure a default was sent to the mortgagor in this case on November 16, 2008, the version of [Section] 35A, that was enacted in 2007 and took effect on May 1, 2008, is applicable."). Defendants contend that plaintiff therefore cannot exercise a right to cure (and does not need to be sent a notice of that right) until after a five-year period has elapsed. Plaintiff, however, contends that the 2010 amendments retroactively shortened that period to three years, and that defendants are therefore required to send her another notice of her right to cure before they can accelerate or foreclose on her mortgage loan.

Under plaintiff's interpretation of the statute, "[a] homeowner who received a cure notice in 2009 under the old five-year version would now be entitled to a new cure notice after three

10

years (in 2012)." (Pl. Mem. at 9). "Conversely, a homeowner who receives a notice today would not be entitled to a new notice until 2019, because by the time three years have passed, in 2017, the law in effect will provide for a five-year cure period." (*Id.* at 9-10). In sum, plaintiff contends the three-year cure period in the amendments is retroactive to 2007 but effectively expired in 2013. In contrast, under defendants' interpretation of the statute, a mortgagor who received a right-to-cure notice before August 7, 2010, cannot exercise the right to cure until five years have passed. A homeowner who defaults between that date and January 1, 2016, would be barred from exercising the right to cure for only three years.

In Massachusetts, "[i]t is a canon of statutory construction that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Commonwealth v. Parent*, 465 Mass. 395, 409 (2013) (quoting *Welch v. Sudbury Youth Soccer Ass'n, Inc.*, 453 Mass. 352, 354-55 (2009)). Plaintiff contends that the amendments' plain language, legislative intent, and sunset provision support the interpretation that the amendments were meant to retroactively shorten the period between successive exercises of the right to cure to three years for mortgagors who had received a right-to-cure notice in 2009 or earlier.

The plain language of the amendments contains no statement about their retroactivity. *See generally* 2010 Mass. Legis. Serv. Ch. 258 (S.B. 2407). The Massachusetts Office of Consumer Affairs and Business Regulation "states unequivocally that [the amendments are] not retroactive." *Epps v. Countrywide Home Loans, Inc.*, 2011 WL 5931727, at *4 (Mass. Super. Ct. Nov. 23, 2011). While the *Epps* court considered a foreclosure that occurred before the amendments were enacted, no language in the statute contradicts that court's interpretation. *See*

11

2010 Mass. Legis. Serv. Ch. 258 (S.B. 2407). Plaintiff contends that if the intent of the legislature was to "create[] a three-year expiration date for cure notices that are sent after the August 7, 2010 effective date of the amendment, and allow[] a five-year expiration date for notices sent under the previous version of the statute," it "would have explicitly prescribed this outcome." (Pl. Mem. at 7). Under basic statutory interpretation rules, however, that is exactly how the amendments would be interpreted. *See Schumacher*, 467 Mass. at 422 n.3. The legislature would have had to explicitly prescribe retroactivity if that was its intent.

The legislative history and purpose are also silent as to whether the amendments are retroactive. Plaintiff points out that the statute's preamble states: "The deferred operation of this act would tend to defeat its purpose, which is to protect forthwith the citizens and neighborhoods of the commonwealth, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience." 2010 Mass. Legis. Serv. Ch. 258 (S.B. 2407).[4] She contends that because the law was intended to take effect immediately, its purpose was to shorten the period between consecutive exercises of the right from five to three years for mortgagors who received notices before the amendments were enacted. However, plaintiff provides no evidence for the proposition that the legislature intended to apply the amendments *retroactively* instead of *immediately*. There is no evidence that the legislature was attempting to aid mortgagors who had already defaulted on their mortgages and received right-to-cure notices as opposed to those who were about to default but had not received such notices.

---

[4] Massachusetts statutes normally take effect ninety days after being signed into law by the governor. Mass. Const. Amend. Art. 48, Ref., Pt. 1. Where, as here, the legislature passes an emergency preamble by a two-thirds vote, the legislation takes effect immediately. Mass. Const. Amen. Art. 48, Ref., Pt. 2.

Plaintiff finally contends that failing to apply the right-to-cure period retroactively would be illogical when combined with the amendments' sunset provision. She contends that not interpreting the amendments retroactively "is plainly inconsistent with the purpose of the 2010 amendment, which was to immediately expand protections for homeowners and end this enhanced protection in 2016." (Pl. Mem. at 10). She also contends that defendants' interpretation of the statute would extend the amendments' protection past 2016 because mortgagors who exercise their right to cure in 2015 could again exercise the right in 2018. Under plaintiff's interpretation, however, the enhanced protection for mortgagors ended in 2013. This appears contrary to the legislature's intent if that intent was to provide for enhanced protection until 2016.

Defendants' interpretation of the statute is more reasonable, as well as more practicable. That interpretation is as follows: any mortgagor who received a right-to-cure notice *before* the amendments were enacted must wait five years before exercising the right to cure again. Any mortgagor who received a right-to-cure notice *after* the amendments *were enacted* need only wait three years before exercising the right to cure again. Any mortgagor who receives a right-to-cure notice *after* the amendments *expire again* must wait five years to exercise a subsequent right to cure. This interpretation follows from the plain words of the amendments and the normal way such amendments are interpreted. It also avoids confusion for mortgagees attempting to comply with the statute by providing dates for the change in the period between cures (August 7, 2010 and January 1, 2016) that are actually explicitly mentioned in the

amendments.[5]

Under that framework, plaintiff is not entitled to a right-to-cure notice under Section 35A because she cannot exercise a right to cure until December 20, 2014, or five years after her 2009 right-to-cure notice. Defendants therefore did not violate Section 35A by failing to send her a second right-to-cure notice in 2012.

Accordingly, defendants' motion to dismiss will be granted as to plaintiff's Section 35A claims.

B.     **Chapter 35B Claim**

Under Mass. Gen. Laws ch. 244, § 35B, mortgagees are required to send a notice of the mortgagor's rights to pursue a modified mortgage loan along with any required Section 35A notice. *Id.* § 35B(c). "The right to a modified mortgage loan . . . shall be granted once during any 3-year period, regardless of the mortgage holder." *Id.*

Plaintiff admits that the loan modification she received after her first default complied with the requirements of Section 35B. However, she contends that she is entitled to another loan modification to the extent that she is also entitled to notice and a right to cure under Section 35A. Because plaintiff is not entitled to another notice or right to cure under Section 35A until December 20, 2014, she is also not entitled to a notice or right to a loan modification under Section 35B. Accordingly, defendants' motion to dismiss will be granted as to plaintiff's Section 35B claim.

---

[5] Defendants also contend that the 2010 amendments are not retroactive under *Jepson*. The *Jepson* court did not address whether the shortening of the cure period was retroactive because the mortgagor in that case had received a right-to-cure notice less than three years before the case was filed, and therefore did not have the right to another notice under either version of the statute. 2012 WL 605598, at *3.

## C. Negligence Claim

The complaint alleges a claim under a common-law theory of negligence. Defendants contend that they cannot be held liable for negligence because they did not owe plaintiff a legal duty to modify her mortgage loan, and because the claim is barred by the economic-loss doctrine. Plaintiff does not oppose dismissal of her negligence claim. Instead, she moves to amend the claim to one of negligent misrepresentation.

Under Fed. R. Civ. P. 15, a party may amend its pleading once as a matter of course within 21 days after serving it, or within 21 days after service of a responsive pleading or motion under Fed. R. Civ. P. 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend a pleading only with consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Leave to amend should not be granted if the moving party has shown undue delay, bad faith, or a dilatory motive; leave may also be denied if the amendment would be futile or cause undue prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962). There are no issues of undue delay, bad faith, dilatory motive, or undue prejudice in this case.

A court will measure "futility" by different yardsticks depending on the posture of the case before it. *Hatch v. Department for Children, Youth, and their Families*, 274 F.3d 12, 19 (1st Cir. 2001). If leave to amend is sought before the completion of discovery and the filing of summary judgment motions, "futility" is judged by reference to the liberal criteria of Fed. R. Civ. P. 12(b)(6). *Id.*; *see also Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

To prove a tort of negligent misrepresentation in Massachusetts,
a plaintiff must establish that the defendant (1) in the course of her business, or in a

15

> transaction in which she had a pecuniary interest, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that she (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

*DeWolfe v. Hingham Centre, Ltd.*, 464 Mass. 795, 799-800 (2013); *see also Cummings v. HPG Intern., Inc.* 244 F.3d 16, 24 (1st Cir. 2001) (citing, among others, the Restatement (Second) of Torts § 552(1) (1977)).

The court in *Dill v. American Home Mortg. Serv., Inc.*, 935 F. Supp. 2d 299 (D. Mass. 2013), confronted a situation similar to this case. In *Dill*, two mortgagors brought a claim for negligence against their mortgagee for falsely representing to them that they were eligible for a loan modification. 935 F. Supp. 2d at 304. The mortgagee moved to dismiss the negligence claim, contending it was barred by the economic-loss doctrine. *Id.* at 303. The *Dill* court agreed, but allowed the claim to survive as a claim for negligent misrepresentation. *Id.* at 304.

In this case, the complaint alleges that defendants acted negligently by falsely representing to plaintiff that they were reviewing her mortgage for a loan modification in good faith. It also alleges that defendants repeatedly fabricated reasons as to why plaintiff was ineligible for a loan modification. The complaint further alleges that plaintiff reasonably relied on those representations and lost opportunities to cure her default as a result. Finally, the complaint alleges that defendants knew or should have known the information they were giving plaintiff was false. The complaint therefore alleges sufficient facts to state a claim for negligent misrepresentation. Amendment of the negligence claim to a negligent misrepresentation claim

would not be futile. *See Dill*, 935 F. Supp. 2d at 303-304.[6] Whether the claim can survive summary judgment is not the question before the Court at this stage of the proceedings.

Accordingly, plaintiff's motion to amend her negligence claim to a negligent misrepresentation claim will be granted.

### D. Chapter 93A Claim

Under Chapter 93A, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93 A, § 2(a). "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" *Cummings*, 244 F.3d at 25 (quoting *PMP Assoc. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)).

The complaint alleges that defendants acted unfairly and deceptively when they told plaintiff that she was ineligible for a loan modification because of investor guidelines that, according to plaintiff, do not actually exist. The complaint further alleges that defendants purposefully delayed plaintiff's ability to repay her loan until her account was more than 180 days delinquent and therefore ineligible for a loan modification. These misrepresentations are sufficient, at this stage of the proceedings, to allege a Chapter 93A claim. *See Cummings*, 244 F.3d at 25 (noting that a Chapter 93A claim can be sustained by evidence of unfair misrepresentations).

Accordingly, defendants' motion to dismiss the Chapter 93A claim will be denied.

---

[6] In Massachusetts, the economic-loss doctrine does not apply to claims of negligent misrepresentation. *Dill*, 935 F. Supp. 2d at 303 (citing *Nota Constr. Corp. v. Keyes Assocs.*, 45 Mass. App. Ct. 15, 20 (1998)); *see also Craig v. Everett M. Brooks Co.*, 351 Mass. 497, 499-501 (1967).

17

**IV.     Conclusion**

For the foregoing reasons, plaintiff's motion to amend her negligence claim to a negligent misrepresentation claim is GRANTED.  Defendants' motion to dismiss is GRANTED as to the Section 35A and Section 35B claims, and DENIED as to the negligent misrepresentation and Chapter 93A claims.

**So Ordered.**


                                                            /s/ F. Dennis Saylor
                                                            F. Dennis Saylor IV
Dated: June 12, 2014                                        United States District Judge